Case 2:19-cv-00119   Document 18   Filed on 03/18/20 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 18, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SCOTT MOODY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:19-CV-119 |
| | § | |
| AMW CONSTRUCTION, LLC, | § | |
| | § | |
| Defendant. | § | |

# ORDER

The Court is in receipt of the Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice, Dkt. No. 15, and Plaintiff's Motion for Attorney's Fees and Costs, Dkt. No. 17.

For the reasons below, the Court **GRANTS** the Motion for Approval of Settlement Agreement and Dismissal with Prejudice, Dkt. No. 15, and **GRANTS** Plaintiff's Motion for Attorney's Fees and Costs, Dkt. No. 17.

## I.  Background

On April 24, 2019, Plaintiff Scott Moody ("Moody") filed suit to recover overtime wages and damages under the Fair Labor Standards Act ("FLSA") against Defendant AMW Construction, LLC ("AMW"). Dkt. No. 1. Plaintiff argues that Defendant unlawfully withheld overtime wages when working as a septic worker for Defendant in the Aransas Pass, Corpus Christi, and Rockport, Texas areas. *Id*. at 3.

The parties reached an agreement to settle this lawsuit and have filed their Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice. Dkt. No. 15. Plaintiff also filed a Motion for Attorney's Fees and Costs. Dkt. No. 17. The Court now considers the pending motions.

## II. Settlement Terms

The parties reached a settlement based on a payment to Plaintiff reflecting a compromise but not an admission of liability. Dkt. No. 15-1 at 1. Under the settlement agreement, Defendant will pay a total sum of $10,000.000—$4,000.00 to Plaintiff, and $6,000.00 in attorney's fees and costs. *Id.* at 5. Plaintiff will receive his share of the settlement as follows: (1) one half as back wages, from which taxes will be withheld and for which a W-2 will be issued; and (2) one half as liquidated damages, for which a Form 1099 will be issued. *Id.* In exchange for the payments set forth in the settlement agreement, Plaintiff releases and discharges Defendant from any and all claims, charges, complaints, liabilities, or obligations of any kind whatsoever, whether known or unknown, arising from or related to his employment or termination of that employment, to any pay or benefit or other consideration which may be claimed or due in connection with his employment or separation from employment that may exist or be claimed to exist as of his acceptance of the agreement and the consideration payable under it. *Id.* at 2.

## III. Motion for Approval of Settlement Agreement

### a. Legal Standard

Courts may approve FLSA settlement agreements only if they reflect "a fair and reasonable compromise of a bona fide dispute under the FLSA." *Beardslee v. Randalls Food & Drugs LP*, No. H-09-1200, 2009 WL 1957714, at *1 (S.D. Tex. July 7, 2009). When scrutinizing an FLSA settlement agreement, courts first look to the existence of a bona fide dispute. *Villeda v. Landry's Restaurant, Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009). A bona fide dispute as to liability exists where the evidence in the record is inconclusive as to the hours worked or the amount of compensation owed. *Sandlin v. Grand Isle Shipyard, Inc.*, No. 17-10083, 2018 WL 2065595, at *6 (E.D. La. May 3, 2018). For example, parties may point to conflicting evidence in the record as to the hours worked or wages owed[1] or evidence

---

[1] *See Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) (finding bona fide dispute where plaintiff maintained in his statement that he was owed over $3,000 in

demonstrating that it is impossible to determine those amounts.[2] Submission of the settlement agreement containing conclusory language stating the release of claims in exchange for a certain amount, without more, is insufficient to prove a bona fide dispute.[3]

Courts then look to whether the proposed settlement is a fair and reasonable compromise over the issues. "If the settlement reflects 'a reasonable compromise over the issues,' the court may approve it." *Villeda*, 2009 WL 3233405, at *1. (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)); *see also Jarrard v. Se. Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947). "The standard for whether a class action settlement should be approved is whether the settlement is 'fair, adequate and reasonable' and has been entered into without collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lynn's Food Stores*, 679 F.2d at 1355.

"Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires a court approval to finalize a proposed class action settlement." *Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). "Thus, the Rule 23(e) standard encompasses the 'fair and reasonable' settlement standard of the FLSA collective action, and cases interpreting Rule 23(e) are analogous and applicable to the instant FLSA action." *Id.* at 2. (quoting *Altier v. Worley Catastrophe Resp., LLC*, Nos. 11-241, 11-242, 2012 WL 161824, at *14 (E.D. La. Jan. 18, 2012)).

The Fifth Circuit directs courts to consider six factors in evaluating proposed settlement agreements in class actions: (1) the existence of fraud or collusion behind

---

overtime compensation and defendants presented conflicting evidence that plaintiff was owed only $509.06).

[2] *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012) (finding bona fide dispute where evidence included union representative's conclusion that "it would be impossible to determine" actual hours worked).

[3] *See Lopez v. S. Arch, LLC*, No. 15-6302, 2016 WL 3617671, at *5 (E.D. La. July 6, 2016) (finding no bona fide dispute where parties only offered as evidence the settlement agreement containing "broad, boilerplate language stating that plaintiff released all claims [and] acknowledged that 'he is entitled to receive no other payments, benefits, or compensation' from Defendants besides his $500 settlement").

the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "While these six factors are more applicable to a collective action under FLSA than an action involving a single plaintiff, the Court will use them to guide its analysis to the extent feasible." *Rosa v. Gulfcoast Wireless, Inc.*, Civ. No. 18-4577, 2018 WL 6326445, at *2 (E.D. La. Dec. 3, 2018).

### b. Bona Fide Dispute

Plaintiff alleges the following in his complaint: Plaintiff worked as a septic worker responsible for installing, repairing, and cleaning out septic systems and dumping waste at disposal sites throughout Nueces County and San Patricio County. He was employed by Defendant from August 2017 until February 2019. Though he worked an average of 9 to 11 hours per day, 5 to 6 days a week, Plaintiff was not paid overtime compensation. Dkt. No. 1 at 3–4. Defendant has denied liability and asserts that Plaintiff was paid for any overtime hours worked. Dkt. No. 4 at 2.

After review, the Court finds the existence of a bona fide dispute as to the hours worked and overtime compensation owed. Plaintiff alleges that he deserves $2,000.00 in unpaid overtime compensation. Dkt. No. 15 at 5. In contrast, Defendant asserts that while Plaintiff worked overtime "on occasion," he "missed many days of work and worked less than forty hours during many weeks" and "was paid overtime at the overtime rate, for all hours worked over forty in a workweek." Dkt. No. 4 at 2. The Court therefore concludes that the parties' disagreement over the hours worked and overtime pay owed sufficiently amounts to a bona fide dispute.

### c. Fair and Reasonable Compromise

As stated above, the Court examines the following six factors to determine whether a settlement is "fair and reasonable": (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Court reviews each factor in turn:

1. The parties were represented by counsel and reached their proposed settlement through arm's length negotiations. Accordingly, there is no concern of fraud or collusion behind the settlement. *See Batchedler v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 526 (N.D. Miss. 2003).

2. The parties expressed their intent to serve interrogatories and take various depositions prior to the close of discovery, in addition to trying this case, which would require additional time and expenses. *See* Dkt. No. 12 at 2–3. A lengthy trial would consume court resources, expand parties' costs, and delay any eventual recovery. *See Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2008 WL 9410399, at *4 (S.D. Tex. May 7, 2008).

3. The parties exchanged initial disclosures and engaged in arm's length negotiations. Dkt. No. 15 at 4. The discovery and negotiations that took place before reaching settlement enabled counsel for the parties to carefully assess the legal and factual merits of the case. *Quintanilla*, 2008 WL 9410399, at *4.

4. The parties disagreed whether Plaintiff could satisfy his burden of proving the number of overtime hours worked. Dkt. No. 15 at 4. It is therefore possible that Plaintiff would not have prevailed on the merits.

5. The settlement will pay Plaintiff a full recovery for unpaid overtime wages ($2,000.00), plus an additional amount for liquidated damages ($2,000.00). Dkt. No. 15 at 4. Meanwhile, Defendant asserts that Plaintiff is entitled to no recovery. The Court also takes into account "the risks inherent in this

> litigation, as well as the costs of litigation" in determining whether the settlement amount is fair and reasonable. *Quintanilla*, 2008 WL 9410399, at *5. Further, proposed settlements that amount only to a fraction of the potential recovery do not indicate that the settlement is not fair and reasonable. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974).

6. The settlement is the product of arm's length negotiations after investigation and legal analysis by the parties' counsel. Dkt. No. 15 at 5. The parties entered into the settlement agreement voluntarily and knowingly. Dkt. No. 15-1 at 2. The terms of the settlement have been approved by Plaintiff, Defendant, and their respective counsel. *Id.* Endorsement of a proposed FLSA agreement by counsel for both parties is a "factor that weighs in favor of approval." *Quintanilla*, 2008 WL 9410399, at *5.

After review, the Court concludes that the proposed settlement agreement is a fair and reasonable compromise of Plaintiff's bona fide FLSA dispute.

## IV. Motion for Attorney's Fees and Costs

### a. Legal Standard

#### i. Attorney's Fees

Under the FLSA, courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Courts use the lodestar method to assess attorney's fees in FLSA suits. *See Saizan v. Delta Concrete Prods., Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "In calculating a lodestar, the number of hours reasonably expended are multiplied by an appropriate hourly rate in the community for such work." *Villegas v. Regions Bank*, No. H-11-904, 2013 WL 76719, at *2 (S.D. Tex. Jan. 4, 2013) (citing *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003)).

The party seeking reimbursement of attorney's fees "bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence." *Ranger v. Gonzalez Mascorro*, 274 F.R.D. 585, 595 (S.D. Tex. 2011) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Bode*

*v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). The court should use this time "as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented." *Id.* (citing *Watkins*, 7 F.3d at 457). The hours remaining are those reasonably expended. *Id.* However, the court anticipates that "[c]ounsel exercises billing judgment when it documents hours charged and the hours written off as unproductive, excessive, or redundant." *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-295, 2016 WL 4594945, at *2 (S.D. Tex. Sept. 2, 2016).

A reasonable hourly rate should be determined based on "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Rangel*, 274 F.R.D. at 596 (quoting *Normam v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)) (internal quotation marks omitted). The relevant legal community is the community in which the court sits. *Id.* (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). "The movant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates in the community." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Proper evidence of a reasonable hourly rate "includes an attorney's own affidavit presenting information as to the rates actually billed and paid in similar lawsuits." *Id.* (citations omitted). Generally, however, the reasonable hourly rate for a community is established "through affidavits of other attorneys practicing there." *Id.* (citing *Tollett*, 285 F.3d at 368). Such affidavits "should contain direct or opinion evidence as to what local attorneys would charge under similar circumstances." *Id.* (citation omitted).

"After calculating the lodestar, the court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors."[4] *Williams v. Best Temp.*

---

[4] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the

Case 2:19-cv-00119   Document 18   Filed on 03/18/20 in TXSD   Page 8 of 10

*Servs., LLC*, No. 3:14-CV-484-D, 2015 WL 12763509, at *3 (N.D. Tex. Aug. 18, 2015) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995)). "Because the lodestar is presumed reasonable, it should be modified only in exceptional cases." *Id.* (citing *Watkins*, 7 F.3d at 457).

### ii. Costs

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d). In addition, pursuant to the FLSA, a court "shall allow . . . costs of the action." 29 U.S.C. § 216. Taxable costs include: "(1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of a deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case." *Mauricio v. Philip Galyen, P.C.*, 174 F. Supp. 3d 944, 952 (N.D. Tex. 2016) (citing 28 U.S.C. §§ 1821 & 1920). In the context of FLSA cases, "[c]ourts have generally been reticent to grant costs beyond those items enumerated in 28 U.S.C. § 1920." *Entizne v. Smith Moorevision LLC*, No. 3:13-CV-2997-B, 2014 WL 1612394, at *5 (N.D. Tex. Apr. 22, 2014) (citing *Hernandez v. Aleman Constr., Inc.*, No. 3:10-CV-2229-BN, 2013 WL 5873289, at *6–*7 (N.D. Tex. Nov. 1, 2013) (rejecting request for costs including process serving, mediation services, mileage, parking, office supplies, teleconferencing, and FedEx shipping)). Further, "the Fifth Circuit has held that there is no statutory authority in the FLSA to award costs, such as expert witness fees, not enumerated in 28 U.S.C. § 1920." *Novick v. Shipcom Wireless, Inc.*, No. 4:16-CV-730, 2018 WL 6079348, at *4 (S.D. Tex. Nov. 21, 2018) (citing *Tyler v. Union Oil Co. of Ca.*, 304 F.3d 379, 404–05 (5th Cir. 2002)) (listing cases); *see also Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (emphasizing "the Supreme

---

monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974).


Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary").

### b. Legal Analysis

The first step in computing the lodestar is determining the reasonable hourly rate. *Villegas*, 2013 WL 76719, at *3. Plaintiff seeks the following hourly rates: (1) $450 for Clif Alexander ("Alexander"); (2) $400 for Lauren Braddy ("Braddy"); (3) $350 for Carter Hastings ("Hastings"); and (4) $125 for the paralegals. Dkt. No. 17 at 6. In support of the motion, Alexander submits an affidavit attesting to the experience of each attorney and thus the reasonableness of their requested hourly rates. *See* Dkt. No. 17-1, Ex. A, Declaration of Clif Alexander. Given each attorney's experience and relevant caselaw, the Court determines that the following hourly rates are reasonable: (1) $400 for Alexander; (2) $350 for Braddy; (3) $300 for Hastings; and (4) $125 for the paralegals. *See, e.g.*, *Cantu v. Hinojosa*, No. 2:16-CV-287 (S.D. Tex.) (Tagle, J.).

The second step in the lodestar calculation of attorney's fees is determining the number of hours that were reasonably expended on the litigation. *Villegas*, 2013 WL 76719, at *3. Plaintiff represents that 24 hours were expended on the case, so counsel would be entitled to $7,300.00 in attorney's fees based on the reasonable hourly rates. Dkt. No. 17 at 6. Plaintiff also seeks $1,010.00 in costs to recover filing fees, service, legal research, and PACER. *Id.* at 7. Further, Alexander provides a summary of the hours expended on tasks throughout the litigation. *See* Dkt. No. 17-1. In exercising billing judgment, Plaintiff's counsel has agreed to a reduction in attorney's fees for settlement purposes and therefore seeks a total of $6,000.00 in attorney's fees and costs. Dkt. No. 17 at 8. The Court concludes that under these circumstances, it is appropriate to award $6,000.00 in attorney's fees and costs—$5,600.00 in attorney's fees and $400.00 in costs.[5]

---

[5] Plaintiff may only recover $400 in filing fees because all other costs are not provided for in 28 U.S.C. § 1821 or § 1920, and the FLSA does not explicitly authorize recovery of costs beyond those enumerated in § 1920. *See, e.g.*, *Hernandez*, 2013 WL 5873289, at *6–*7 (rejecting request for costs

## V.   Conclusion

For the reasons above, the Court **GRANTS** the Motion for Approval of Settlement Agreement and Dismissal with Prejudice, Dkt. No. 15, and **GRANTS** Plaintiff's Motion for Attorney's Fees and Costs, Dkt. No. 17.

The Court **DIRECTS** the Clerk to close the case.

SIGNED this 18th day of March, 2020.

_____
Hilda Tagle
Senior United States District Judge

---

including private process serving, mediation services, mileage, parking, office supplies, teleconferencing, and FedEx shipping).